UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATHAN P. GOLDSTEIN,<br>as Executive Director, Massachusetts<br>Laborers' Benefit Funds,<br><br>      Plaintiff,<br><br>      v.<br><br>ESSENTIAL DEMO, INC.,<br><br>      Defendant, and<br><br>RISE CONSTRUCTION MANAGEMENT,<br>INC.,<br><br>      Reach-and-Apply Defendant. | Civil Action No.<br>24-10248-FDS |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR**
**<u>PRELIMINARY INJUNCTION AGAINST REACH-AND-APPLY DEFENDANT</u>**

**SAYLOR, C.J.**

      This is a dispute concerning allegedly unpaid employee-benefit contributions. Plaintiff Nathan Goldstein, on behalf of the Massachusetts Laborers' Benefit Funds, contends that defendant Essential Demo, Inc. has failed to make employee-benefit contributions to the Funds as mandated by a collective-bargaining agreement. Goldstein asserts claims under Sections 502 and 515 of the Employee Retirement Income Security Act ("ERISA") and Section 301 of the Labor Management Relations Act ("LMRA") to recover those unpaid contributions and associated liquidated damages, interest, and legal fees and costs.

      Essential Demo, Inc. does not dispute that it owes the Funds contributions, nor does it dispute the amount allegedly owed. However, Essential contends that it is unable to pay the sum

demanded because Rise Construction Management, Inc., a general contractor, has failed to pay Essential for its work as a subcontractor on several of Rise's projects.

Goldstein seeks to reach and apply the funds owed by Rise to Essential to satisfy the debt owed by Essential to the Funds. Because of Rise's allegedly tenuous financial position, Goldstein has moved for a preliminary injunction (1) requiring Rise to deposit into escrow the amount it allegedly owes to Essential, (2) ordering Rise to provide the Funds with an accounting of all the amounts owed to Essential, and (3) allowing the Funds to reach the amount Rise owes to Essential and apply it to Essential's debt to the Funds.

For the reasons set forth below, the motion will be granted in part and denied in part.[1]

I. **Background**

    A. **Factual Background**

The facts are set forth as described in the affidavits, documentary evidence, and the amended verified complaint.

    1. **The Parties**

Nathan P. Goldstein is the Executive Director of the Massachusetts Laborers' Benefit Funds ("the Funds"), located in Burlington, Massachusetts, and has authority over the collection of fund contributions as a fiduciary of the funds under 29 U.S.C. § 1002(21)(A). (Am. Ver. Compl. ¶ 9).

The Funds consist of employee-benefit plans covered by ERISA as well as "non-ERISA" funds. (*Id.* ¶¶ 8, 14-16). Employers that have signed a relevant collective-bargaining agreement

---

[1] Plaintiff has moved for both a temporary restraining order and preliminary injunction. However, to the extent that plaintiff's motion seeks a temporary restraining order as to Rise, the Court will deem that request to be a motion for a preliminary injunction. To obtain the more "extraordinary relief of a temporary restraining order," as compared to a motion for a preliminary injunction, a party must allege "immediate and irreparable" injury or loss that will occur *before* the adverse party can be heard in opposition. *Imasuen v. Winn Prop. Mgmt.*, 2013 WL 6859094, at *3 (D. Mass. Dec. 26, 2013); Fed. R. Civ. P. 65(b)(1)(A). Those circumstances are not present here.

("CBA") are obligated to remit contributions to each type of fund for every hour worked by a covered employee. (*Id.* ¶¶ 14-15).

Essential Demo, Inc. is a Massachusetts corporation providing demolition services in Massachusetts and northern New England. (*Id.* ¶ 10; C. Grossman Aff. ¶ 2). It is a signatory to CBAs requiring contributions to the Funds for covered employees.

Rise Construction Management, Inc. is a Massachusetts corporation providing general contracting and construction-management services. (Am. Ver. Compl. ¶ 11; J. Grossman Aff. ¶ 2). It is also a signatory to CBAs requiring contributions to the Funds for covered employees.

### 2. The Underlying Dispute

On August 1, 2022, Essential signed an "Acceptance of Agreement and Declaration of Trust" agreeing to be bound by several CBAs with the Massachusetts and Northern New England Laborers' District Council ("the Union"). (Am. Ver. Compl. Ex. 1). Those CBAs require Essential to make contributions to the Funds on a monthly basis for each hour worked by covered employees in the preceding month, at rates set out in the CBA's Appendix. (Am. Ver. Compl. Ex. 2 at 26-37). In addition to those contributions, the CBAs require submission of remittance reports detailing the contribution calculations. (*Id.*).

Upon reasonable notice, the Funds are authorized to conduct an audit of Essential's payroll records to ensure compliance with the contribution requirements. (*Id.* at 35-36). If Essential either fails to submit to such an audit or fails to submit monthly remittance reports for more than two months, the Funds are entitled to estimate the number of hours for each unaudited or unreported month using "the highest number of employee hours for any month during the most recent twelve months audited, or during any of the last twelve months for which the Employer reported contributions, whichever monthly number of hours is greater." (*Id.* at 36).

Under the CBA, employers who fail to make their mandated contributions are required to

pay interest on the delinquent contributions at a rate of 10% per year, liquidated damages equal to the higher of the interest or 20% of the delinquency, and associated legal fees and costs. (*Id.* at 34-35).

In July 2023, Essential began to have difficulty making its required contributions on time. (McAnarney Decl. ¶ 12). In June 2024, the Funds conducted an audit of Essential's payroll for the period July 1, 2023, through May 31, 2024. (*Id.* ¶ 15). That audit revealed that Essential owed the Funds $512,319.62 for underpaid and unpaid contributions. (*Id.*). Thereafter, payments were made by and on behalf of Essential, leading to the issuance of an adjusted audit report on August 6, 2024, showing that Essential owed (after taking a one-week overpayment into account) $194,278.47 in unpaid contributions and interest. (*Id.* ¶ 16). Essential concedes that it owes that amount to the funds. (C. Grossman Aff. ¶ 11).

Accounting for liquidated damages, legal fees and costs, and the continued accrual of interest, Essential owed the Funds a total of $283,362.20 as of October 7, 2024. (McAnarney Decl. Ex. D).

### 3. **The Reach-and-Apply Dispute**

Essential worked as a demolition subcontractor for Rise Construction Management, Inc. on several projects in 2023 and 2024. Essential contends that Rise owes it $319,744.74 for completed work on those projects and, as a result, it does not have the resources to pay the amount it owes to the Funds. (C. Grossman Aff. ¶¶ 9-10; Second C. Grossman Aff. ¶ 13). Essential has submitted invoices, email correspondence, and contracts in support of that assertion. (*See* C. Grossman Aff. Ex. A; Second C. Grossman Aff. Exs. A-D). On the basis of otherwise-unsupported assertions in an affidavit, Rise disputes the amount owed to Essential. (J. Grossman Aff.).

B. **Procedural Background**

On March 27, 2024, Goldstein filed the operative amended verified complaint naming Essential as defendant and Rise as reach-and-apply defendant. The complaint asserts claims for violation of Section 515 of ERISA and Section 301 of the LMRA and seeks damages and injunctive relief against Essential along with attachment of Essential's property and permission "to reach and apply the monies due to Essential Demo from [Rise] to Essential Demo's debt to the Funds." (Am. Ver. Compl. at 7).

Goldstein has moved for a preliminary injunction (1) requiring Rise to deposit into escrow the amount it allegedly owes to Essential; (2) ordering Rise to provide the Funds with an accounting of all the amounts owed to Essential; and (3) allowing the Funds to reach the amount Rise owes to Essential and apply it to Essential's debt to the Funds.

II. **Preliminary Injunction**

A. **Legal Standard**

To issue a preliminary injunction under Fed. R. Civ. P. 65, a district court must find that the moving party has established (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) that the balance of equities weighs in his favor, and (4) that a preliminary injunction is in the public interest. *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Of those factors, the likelihood of success on the merits "normally weighs heaviest in the decisional scales." *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 66 (1st Cir. 2009); *see also New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) ("The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."). Furthermore, "[t]he burden of

demonstrating that a denial of interim relief is likely to cause irreparable harm rests squarely upon the movant." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004).

The court may accept as true "well-pleaded allegations [in the complaint] and uncontroverted affidavits." *Rohm & Haas Elec. Materials, LLC v. Electronic Circuits Supplies, Inc.*, 759 F. Supp. 2d 110, 114 n.2 (D. Mass. 2010). "The Court may also rely on otherwise inadmissible evidence, including hearsay, in deciding a motion for preliminary injunction." *Boston Taxi Owners Ass'n v. City of Boston*, 84 F. Supp. 3d 72, 78 (D. Mass. 2015) (citing *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)).

  B.  **Analysis**

  1.  **Likelihood of Success on the Merits**

  a.  **The ERISA Claim**

The ERISA claim against Essential is almost certain to succeed. ERISA mandates that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. That section "creates a federal right of action independent of the contract pursuant to which the duty to contribute is based and may be enforced by an action in the district court." *Bituminous Coal Operators' Ass'n, Inc. v. Connors*, 867 F.2d 625, 633 (D.C. Cir. 1989). Fiduciaries, such as plaintiff, are empowered to bring civil actions "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). And "courts have granted extraordinary relief in the form of temporary restraining

orders and preliminary injunctions to prevent recoveries from third parties from being dissipated" while ERISA litigation proceeds. *Mank ex rel. Hannaford Health Plan v. Green*, 297 F. Supp. 2d 297, 302 (D. Me. 2003).

Here, there is no dispute that Essential owes contributions to the Funds and there is no dispute as to the overall amount owed. In an affidavit, Christopher Grossman, the Treasurer of Essential, states that he reviewed the Funds' adjusted audit report and agrees that "it represents an accurate assessment of the contributions Essential owes to the Funds." (C. Grossman Aff. ¶ 11). In a second affidavit, he reiterates that position and also recognizes "that the CBA requires delinquent employers to pay interest, liquidated damages[,] and attorney's fees and costs." (Second C. Grossman Aff. ¶ 10). Furthermore, the plain language of the CBA mandates contributions to the Funds by covered employers such as Essential, and the amount owed is supported by uncontested contracts, invoices, and accounting records. The ERISA claim is therefore very likely, if not certain, to succeed on its merits.[2]

### b.   The Reach-and-Apply Claim

The crux of plaintiff's request for preliminary injunction is his contention that he is entitled to reach and apply the monies allegedly owed by Rise to Essential to satisfy the debt owed by Essential to the Funds.

---

[2] It is important to note that the Funds collect contributions for both ERISA and non-ERISA funds. (Am. Ver. Compl. ¶ 16). Plaintiff does not distinguish between delinquent contributions to ERISA funds and delinquent contributions to non-ERISA funds in either the attached audit reports or his briefing. Because of that, it is not clear what portion of the total debt owed by Essential is covered by ERISA. Therefore, the conclusion that the ERISA claim is likely to succeed on its merits does not alone establish that plaintiff is likely to succeed in proving that Essential owes the funds the *total* amount of unpaid contributions alleged. And while the non-ERISA contributions are mandated by a CBA that is covered by the LMRA, plaintiff does not mention his LMRA claim in his motion for preliminary injunction.

Nevertheless, the invoices, accounting documents, contracts, CBA, and affidavits do serve to show the total amount of unpaid contributions owed by Essential to Funds, at least contractually. And, again, Essential does not contest that it is owes the Funds that amount. As discussed below, that is sufficient to establish a "debt" under the Massachusetts reach-and-apply statute.

"Reach and apply is a prejudgment security device which is equitable in nature; it seeks . . . to restrain the defendant's disposition of his own intangible property, and then to reach and apply such property to satisfy the plaintiff's claim." *In re Osgood*, 203 B.R. 865, 869-70 (Bankr. D. Mass. 1997) (quoting Michael C. Gilleran, *Massachusetts Prejudgment Security Devices: Attachment, Trustee Process, and Reach and Apply*, 69 MASS. L. REV. 156, 169-70 (1984)). As to a reach-and-apply order against money owed to a defendant by a third party, Mass. Gen. Laws ch. 214, § 3(6) authorizes "creditors to reach and apply, in payment of a debt, any property, right, title or interest, legal or equitable, of a debtor, within or without the commonwealth . . . ."

Under that statute, "the court must engage in a two-step process to establish (1) the indebtedness of the defendant [to the plaintiff] and (2) [that] the defendant has property that can be reached by the plaintiffs in satisfaction of the defendant's debt." *Hunter v. Youthstream Media Networks, Inc.*, 241 F. Supp. 2d 52, 57 (D. Mass. 2002) (citations omitted). "Additionally, the plaintiff must seek an injunction restraining the debtor or a third party from disposing of property which the plaintiff intends to reach and apply in satisfaction of its claim." *In re Osgood*, 203 B.R. at 869 (citing *Massachusetts Elec. Co. v. Athol One, Inc.*, 391 Mass. 685, 687-88 (1984); *Stockbridge v. Mixer*, 215 Mass. 415, 418 (1913)). "While not all contract claims must be reduced to judgment before the statutory reach and apply is available, a plaintiff may not seek to reach and apply assets where . . . the defendant['s] liability 'is hotly contested and there are disputed issues of fact which must be resolved.'" *Neponset Landing Corp. v. Northwestern Mut. Life Ins. Co.*, 2011 WL 2417128, at *6 (D. Mass. June 10, 2011) (quoting *Hunter*, 241 F. Supp. 2d at 58).

### i. **Establishment of Essential's "Debt"**

Essential's liability is far from "hotly contested"—in fact, it is not contested at all, and

there are no "disputed issues of fact [that] must be resolved." *Hunter*, 241 F. Supp. 2d at 58.

While not expressly raised by either Essential or Rise, the Court must first determine whether the amount owed by Essential to the Funds is properly considered a "debt" under the reach-and-apply statute. The First Circuit analyzed the issue in *In re Rare Coin Galleries of America, Inc.*:

> In *Kilbourne* the [SJC] held that under an earlier version of § 3(6) the term "debt", although broadly construed, did not include a pending breach of contract suit not reduced to judgment:
>
>> "The word 'debt' has never been made to include the simple possibility of being found responsible in damages for the breach of an executory contract where neither the fact of liability nor the amount can be held affirmatively to exist until a judgment shall have been recovered."
>
> [*H.G. Kilbourne Co. v. Standard Stamp Affixer Co.*, 216 Mass. 118, 122 (1913)]. The instant action contains a breach of an executed contract claim as well as tort and statutory claims, but there appears to be no reason why this rule would not extend to such actions as well.

862 F.2d 896, 904 (1st Cir. 1988). Essential's obligation here is not of the "wholly unliquidated" sort that concerned the courts in *Kilbourne* and *Rare Coin Galleries*, "where neither the fact of liability nor the amount can be held affirmatively to exist until a judgment shall have been recovered." *Kilbourne*, 216 Mass. at 122. Instead, it is one where "there is an express promise to pay and the precise sum of money due may be ascertained by simple mathematical calculation from known facts," and which "although not reduced to a certainty and hence in that sense unliquidated, nevertheless may be a debt." *Id.* at 121. As discussed, the CBAs contain an "express promise to pay" contributions according to a precise formula that facilitates determination of the amount owed "by simple mathematical calculation" from the "known facts" of the hours worked by covered employees and the duration of the delinquency. *Id.* Plaintiff has performed that calculation, defendant agrees that it was done correctly, and thus the indebtedness

9

of defendant to plaintiff has been clearly established.

### ii. Ability to Reach the Funds Owed by Rise to Essential

Having found that there is a reasonable likelihood that Essential is indebted to the Funds, the Court must next determine whether Essential has property that can be reached by the Funds in satisfaction of the debt. *See Hunter*, 241 F. Supp. 2d at 57. Essential asserts that Rise owes it $319,744.74 for work done on Rise projects. In support, Essential has submitted two affidavits from its treasurer, which are in turn supported by invoices, email correspondence, and contracts between Essential and Rise. (*See* C. Grossman Aff. Ex. A; Second C. Grossman Aff. Exs. A-D). Rise disputes the amount owed; however, its only support for that contention is a single conclusory affidavit from its CEO, not supported by any documentation. (ECF No. 27). On the evidence before the Court, it appears likely that Essential and plaintiff will succeed in establishing the amount allegedly owed by Rise to Essential.

Because plaintiff has shown he is likely to be successful in establishing Essential's debt to the funds as well as Rise's debt to Essential, both prongs of the reach-and-apply action are likely to be satisfied, and that claim is likely to succeed on its merits.[3]

### 2. Likelihood of Irreparable Harm Absent Interim Relief

Irreparable harm is measured "on a sliding scale, working in conjunction with a moving party's likelihood of success on the merits, such that [t]he strength of the showing necessary on

---

[3] The Auditing Director of the Funds states that "[u]nder Article II, Section 7 of the CBA, once a general contractor receives notice that a subcontractor is delinquent in its contributions payments to the Funds, the general contractor becomes directly liable for the subcontractor's subsequent delinquencies." (McAnarney Decl. ¶ 11). That would suggest that if the Funds had notified Rise that Essential was delinquent, the Funds may have a cause of action against Rise directly, and thus be able to reach the owed money by attachment or execution, potentially rendering a reach-and-apply action inappropriate. *See* Mass. Gen. Laws ch. 214, § 3(6) (specifying application to property "which cannot be reached to be attached or taken on execution"). However, there is no indication that Rise was notified prior to initiation of this suit, and Rise does not dispute that the Funds lack an adequate remedy at law to recover the monies owed. In any event, it appears that the clause concerning ability to reach property on attachment or execution refers to the relationship between a plaintiff and the *primary* debtor, and it is true that plaintiff cannot reach the funds owed by Rise to Essential through attachment or execution against Essential itself.

irreparable harm depends in part on the degree of likelihood of success shown." *Braintree Labs., Inc. v. Citigroup Glob. Mkts. Inc.*, 622 F.3d 36, 42-43 (1st Cir. 2010) (internal quotations and citations omitted). "Irreparable harm most often exists where a party has no adequate remedy at law." *Charlesbank Equity Fund II*, 370 F.3d at 162.

The likelihood of success on the merits here is high. And it is clear that the Funds face a significant risk of such harm absent interim relief. The Funds rely on employer contributions to provide essential benefits to union laborers. The Funds have identified at least three beneficiary employees whose health insurance coverage is dependent on collection of Essential's unpaid contributions and have represented that a currently unidentified number of employees' retirement benefits may be impacted. (McAnarney Decl. ¶¶ 21-22); *see United Steelworkers of America, AFL–CIO v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1280 (3d Cir. 1979) ("[S]urely the possibility that a worker would be denied adequate medical care as a result of having no insurance would constitute 'substantial and irreparable injury.'"); *Whelan v. Colgan*, 602 F.2d 1060, 1062 (2d Cir. 1979) ("[T]he threatened termination of benefits such as medical coverage for workers and their families obviously raised the spectre of irreparable injury.").

Both the Funds' beneficiaries and the Funds as an institution thus face potentially irreparable injury. "One of the principal congressional concerns motivating passage of [ERISA was] that plans should assure themselves of adequate funding by promptly collecting employer contributions." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 580 (1985). "In ERISA, Congress sought to create a pension system in which '[a]ll current accruals of benefits based on current service . . . [would] be paid for immediately.'" *Id.* (quoting H.R. Rep. No. 93–533, p. 14 (1973)). The inability to collect unpaid contributions directly threatens the fundamental purpose of the Funds. Furthermore, the Funds are statutorily required

11

to provide certain benefits regardless of whether contributions are timely collected, and therefore the failure to collect contributions may create unfunded liabilities that threaten the Fund's fundamental financial viability. *See Cent. States, Se. & Sw. Areas Pension Fund v. Admiral Merchants Motor Freight, Inc.,* 511 F. Supp. 38, 42 (D. Minn. 1980) ("[P]ension rights and credits for future benefits must be calculated on the basis of employee service, regardless of whether payments are received from the employer."), aff'd sub nom. *Cent. States, Se. & Sw. Areas Pension Fund v. Jack Cole-Dixie Highway Co.,* 642 F.2d 1122 (8th Cir. 1981); *Cent. States Se. & Sw. Areas Pension Fund v. Hitchings Trucking, Inc.*, 472 F. Supp. 1243, 1247 (E.D. Mich. 1979) (noting that, absent employer contributions, a union pension fund "would be required to meet the financial burden of ERISA's guarantees in the form of pension payments without corresponding contributions to the defendant's employees and similarly situated employees," and that, as a result, "the actuarial soundness of the fund would be compromised"). And given the apparently tenuous financial position of both Essential and Rise, it is certainly likely that without interim relief setting aside the funds Rise owes to Essential, those funds may become irretrievable. *See McNally as Tr., New England Training Tr. Fund v. Certified Power Sys., Inc.*, 2009 WL 10729878, at *1 (D. Mass. Feb. 4, 2009) ("Plaintiffs have shown a significant risk of irreparable harm should Defendant transfer its assets because it would leave Plaintiffs unable to satisfy their obligations to the beneficiaries of the employee benefits funds.").

### 3.     Balance of Equities and Public Interest

The balance of equities also weighs in plaintiff's favor. "The heart of the matter is whether 'the harm caused plaintiff without the injunction, *in light of* the plaintiff's likelihood of eventual success on the merits, outweighs the harm the injunction will cause defendants.'" *United Steelworkers of Am., AFL-CIO v. Textron, Inc.*, 836 F.2d 6, 7 (1st Cir. 1987) (emphasis in original) (quoting *Vargas-Figueroa v. Saldana*, 826 F.2d 160, 162 (1st Cir. 1987)).  No harm

will be caused to Essential; in fact the preliminary relief sought would be in its interest. And Rise will simply be obligated to set aside money that, in all likelihood, it should not be in possession of at all. On the other hand, as laid out above, the potential harm to the Funds is relatively significant, and thus the equities favor granting plaintiff preliminary relief.

And, as to the final factor, "protecting the health and welfare benefits of participating union laborers that are provided by the Funds is in the public interest." *Goldstein v. Batista Contracting LLC*, 671 F. Supp. 3d 68, 75 (D. Mass. 2023).

### C. Remedy

"[A] court's conclusions as to the merits of the issues presented on preliminary injunction are to be understood as statements of probable outcomes." *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir. 1991). While the exact amount that Rise owes to Essential may ultimately be shown to differ, it is probable, based on the evidence before the Court, that the $319,744.74 figure is accurate. And while that amount is greater than the $283,362.20 allegedly owed by Essential to the Funds at the time of filing the present motion, Essential's debt continues to accrue interest and might ultimately grow to equal or surpass the $319,744.74 that plaintiff seeks to reach and apply toward Essential's debt. Thus, protection of the full amount owed by Rise to Essential is appropriate.

### III. Conclusion

For the foregoing reasons, the motion of plaintiff Nathan P. Goldstein, as Executive Director, Massachusetts Laborers' Benefit Funds, for a preliminary injunction is GRANTED in part and DENIED in part. Reach-and-apply defendant Rise Construction Management, Inc. shall deposit the $319,744.74 allegedly owed to Essential Demo, Inc., into an escrow account under the control and jurisdiction of the Court pending final resolution of the case or further order of the Court. Rise Construction Management, Inc. is further ordered to provide plaintiff with an

accounting of all amounts owed to Essential. To the extent plaintiff seeks an order permitting the transfer of those funds and application to the underlying debt, the request is denied without prejudice pending final resolution of the case or further order of the Court.

**So Ordered.**

Dated: May 13, 2025

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court