**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| NATHAN P. GOLDSTEIN, as he is EXECUTIVE DIRECTOR, MASSACHUSETTS LABORERS' BENEFIT FUNDS,<br>Plaintiff,<br><br>v.<br><br>ESSENTIAL DEMO, INC.,<br>Defendant,<br><br>and<br><br>RISE CONSTRUCTION MANAGEMENT INC.,<br>Reach-and-Apply Defendant. | ) | C.A. No. 24-cv-10248-FDS |

**PLAINTIFF'S REPLY TO RISE CONSTRUCTION MANAGEMENT INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CONTEMPT**

Plaintiff Nathan P. Goldstein, as he is Executive Director, Massachusetts Laborers' Benefit Funds ("Plaintiff" or "Funds") hereby submits this reply to Rise Construction Management Inc. ("Rise")'s opposition [ECF No. 45 ("Opposition")] to Plaintiff's motion for contempt [ECF No. 41 ("Contempt Motion")] for its failure to comply with the Court's May 13, 2025 Preliminary Injunction Order [ECF No. 41 ("Order")].

For the reasons below, Rise is in contempt of the Court's Order and has failed to set forth any excuse for its failure to comply.

**A. Rise Has Not Cured Itself of Its Contemptuous Conduct**

Rise does not even attempt to argue that it has complied with the Order or that it has made <u>any</u> effort to do so. It is undisputed that Rise has not deposited the $319,744.74 into escrow or provided the ordered accounting to Plaintiff. Further, Rise does not dispute that it has ignored all communications from Plaintiff's Counsel.

**B. Rise May Not Relitigate The Merits of The Order**

Instead of defending its refusal to comply with the Order, Rise attacks the merits of the Order itself. Rise argues that "the balance of equities was not and is not in the Plaintiff's favor" and that the Order "was improperly granted given Rise's circumstances" and "therefore cannot be enforced now." Opposition at 2, 3. Specifically, Rise argues that "Plaintiff has failed to establish that Rise actually owes money to Essential"; that Plaintiff "received significant payments since the [Preliminary Injunction] Motion was filed" which "ought to be taken into account"; and that "Rise believes that the amount now due the Plaintiff from Essential Demo, Inc. through Rise is approximately $70,812." *Id.* at 2.

Rise did not appeal the Court's Order and did not file a motion for reconsideration, which are the appropriate avenues for raising the type of "mistake of fact or law" arguments Rise asserts here. "[A] contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." *United States v. Lawn Builders of New England, Inc.*, 856 F.2d 388, 395 (1st Cir. 1988) (quoting *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948)); *see also F.T.C. v. Neovi, Inc.*, No. 06-CV-1952 JLS, 2011 WL 1465590, at *3 (S.D. Cal. Apr. 18, 2011) ("Defendants are forewarned that the contempt hearing is neither the time nor the place to relitigate the validity of the Final Order"); *AngioDynamics, Inc. v. Biolitec AG*, 823 F.3d 1, 5 (1st Cir. 2016) (defendant waived argument as to validity of preliminary injunction by waiting to raise it until receiving a contempt order). Rather, an order upon which contempt is based "may not be impeached, avoided or attacked in the later proceedings and no relief can be sought against its command." *In re Monarch Cap. Corp.*, 173 B.R. 31, 40 (D. Mass. 1994), aff'd sub nom. *Monarch Life Ins. Co. v.*

*Ropes & Gray*, 65 F.3d 973 (1st Cir. 1995) (quoting *United States v. Allee*, 888 F.2d 208, 211 (1st Cir.1989)).

Because Rise did not appeal or move for reconsideration of the Court's Order, it has waived its right to relitigate its underlying merits. Nevertheless, for the sake of refocusing the issues relevant to the Contempt Motion, Plaintiff responds to each of Rise's arguments below.

**C. Rise's Assertion About The Amount Owed to The Funds is Incorrect**

Similar to its prior briefing, Rise simply asserts things without offering any evidence in support of its contentions. In making these unsupported claims and half-hearted arguments, Rise attempts to delay accountability and sow confusion. These tactics only serve to increase litigation costs and waste judicial time and resources.

Here, Rise makes conclusory statements about "true" amount of the Funds' claim despite having evidence that its statements are incorrect. As an obvious starting point, Rise has no authority to determine the amount of Funds' claim. As Plaintiff has repeatedly explained, Essential's debt to the Funds consists not only of principal unpaid benefit fund contributions, but also interest, liquidated damages, and attorney's fees and costs, all of which are mandatory under ERISA and are prescribed by the collective bargaining agreement. Essential continued to accrue new contributions delinquencies through March 2025[1], and the amounts owed for interest and liquidated damages are subject to fluctuate based on the principal contributions owed and the period of the delinquency. As the Court's Order correctly pointed out, the Funds' claim would likely increase as litigation continues. ECF No. 41 at 13 ("Essential continues to accrue interest and might ultimately grow to equal or surpass the $319,744.74 that plaintiff seeks to reach and apply toward Essential's debt"). And the Funds' claim *has* increased. As of the end of May 30,

[1] The Union terminated Essential's collective bargaining agreement in March 2025 due to its habitual delinquency.

2025, the date of the Funds' Initial Disclosures, the Funds' claim against Essential totaled $341,004.01. *See* Initial Disclosures, attached here as Exhibit A. The Initial Disclosures provided a detailed explanation of each category of the debt owed by Essential, and Rise was served with the Initial Disclosures on May 30, 2025.

Having made up its own facts about Essential's debt to the Funds, Rise then decides for itself that "Plaintiff [] failed to establish that Rise actually owes money to Essential." Opposition at 2. Again, Rise ignores the fact that Plaintiff *did* produce evidence on this point which included two affidavits from Essential's owner as to the amounts owed, as well as the actual unpaid invoices Essential submitted to Rise. *See* ECF Nos. 25, 25-1, and 31. Further, Plaintiff's Contempt Motion seeks to rectify *Rise's failure to produce the accounting that would shed additional light on this very issue*.

**1. Plaintiff Properly Accounted For Third-Party Payments.**

Rise incorrectly asserts that payments made by developers or general contractors were not accounted for by the Funds. Contrary to Rise's assertions, all amounts paid by third parties (including the developer cited by Rise in its Opposition) have already been applied to Essential's delinquency to the Funds. Rise pretends to be confused as to why Essential's total debt to the Funds did not decrease as these amounts were applied, but Rise is well aware that Essential continued to accrue new delinquencies for new contributions months even as the Funds were able to secure payments for portions of Essential's debt from other third parties. As explained above and in Plaintiff's prior briefing and Initial Disclosures, Essential continued to accrue new contributions delinquencies through March 2025, and thus the total amount of the Funds' claim has increased since the preliminary injunction motion was filed. The other categories of damages, such as interest, liquidated damages, and legal fees have also increased as a result.

### 2. Rise Should Not Get Credit For Third-Party Payments.

Plaintiff's reach-and-apply claim against Rise requires the establishment of two factors: (1) Essential's indebtedness to the Funds; and (2) that Rise owes money to Essential that can be reached by Plaintiff in satisfaction of Essential's debt. *See* Order at 8-10. The Court already found that Plaintiff is likely to succeed on both elements and that the equities support securing the full amount of Plaintiff's claim. *Id.* at 13.

Rise argues that payments made directly to the Funds by developers or other general contractors should somehow redound to Rise's benefit by reducing the amount that Rise owes to Essential. Rise cites no factual basis or legal authority for this proposition. Several third-party payments received by the Funds were wholly unrelated to Rise's projects. And even where payments were made by developers for contributions owed on projects where Rise had served as general contractor prior to its termination, it does not automatically follow that such payment extinguished Rise's own independent payment obligations to Essential.[2] The payments from

[2] While not directly relevant to this Contempt Motion, Rise's claim that the amount it owes Essential should equitably be reduced by amounts paid to the Funds by other third parties is undercut by Essential's affidavits that it is still owed money from Rise (*see* C. Grossman affidavits, ECF No. 25 at ¶¶ 8-9; ECF No. 31 at ¶¶ 11, 13) and the fact that multiple developers have brought their own lawsuits against Rise claiming that Rise accepted millions of dollars in payments from the developers while falsely certifying that the money had been used to pay the subcontractors for their work. As a result, the developers claim, they ended up incurring the additional costs of claims from the subcontractors. *See DW RT Ellery LLC v. Rise Construction Management, Inc. and James Grossman,* Suffolk Sup. Ct. No. 2484CV01063, Docket No. 1 (Complaint) at 1-2 ("Rise and Grossman [] fraudulently requested and received at least $2,254,267.58 that was never paid to Rise's Subcontractors for their corresponding work by, among other things, engaging in a pattern of: (i) intentionally failing to pay Rise's subcontractors, suppliers, and/or vendors [] all amounts due and owing for work performed despite having received corresponding payments from Owner intended for such purpose; (ii) deceiving Owner by submitting Applications for Payment to Owner that included requests for payment of funds for portions of the completed work when the Defendants did not intend to pay the Subcontractors with such funds; and (iii) making a series of intentional misrepresentations, on which Owner detrimentally relied, by submitting multiple Applications for Payment falsely certifying that Rise had paid all amounts due and owing to its Subcontractors for work performed, even though the Defendants had not paid all such amounts to the Subcontractors for their work and did not intend to make such payments."). In a separate ongoing lawsuit, another developer alleges that Rise and Grossman engaged in a "massive fraudulent billing scheme" and that they "fraudulently requested and received over $3.5 million in Project funds that were never paid to Rise's subcontractors for the corresponding work" and "engaged in a civil conspiracy with one or more related Rise entities to…fraudulently transfer Project funds from Rise's bank accounts to the accounts of those other Rise entities." *See 143 Washington LLC v. Rise Construction Management, Inc. et al*, Suffolk Sup. Ct. No. 2484CV00146, Docket No. 1 (Complaint) at 1-2. In that case, the developer alleges that a Rise representative

developers were in settlement of the Funds' claims *against the developer and/or the project*—claims which existed independently from Funds' reach-and-apply claim against Rise. While a direct payment from a developer would extinguish the Funds' claim *against that developer,* the payment would not extinguish or reduce the Funds' reach-and-apply claim *against Rise* because *Rise's debt to Essential remains unchanged*. This reality is reflected in the fact that the Funds' settlement agreement with the developer cited in Rise's Opposition *specifically excludes and reserves the Funds' rights and claims against Rise*. *See* Settlement Agreement and Release, attached as Exhibit B. In other words, just because a developer settled a claim with the Funds for a debt owed by Essential, it does not mean that it settled a claim for a debt owed by Rise.

Moreover, Rise was terminated as general contractor from nearly every project on which Essential worked, and Rise itself has argued that the developers had assumed responsibility for paying subcontractors directly for their work performed after Rise's termination.[3] But Rise is trying to have it both ways. On one hand, Rise is arguing that payments the Funds received from developers should result in a credit towards its own debt to Essential while on the other hand Rise is claiming that it never had an obligation to pay Essential in the first place.

In any event, absent an explicit directive from a developer that a payment is intended to satisfy a debt owed by Rise, Rise does not have an independent right to direct the Funds' application of the payment in a way that redounds to its own benefit, especially where the Funds have produced actual evidence that Rise still owes the full $319,744.74 to Essential. *Warren Bros. Co. v. Sentry Ins.*, 13 Mass. App. Ct. 431, 433-435 (1982).

---

admitted that Rise used its projects as "shell games" by accepting payments from project owners while intentionally withholding payments from subcontractors and manipulating billing to reduce its exposure. *Id.* at 10-11.

[3] Plaintiff has repeatedly requested copies of documents showing that developers assumed such payment obligations but Rise has failed to produce any.

### D. Rise Has Not Shown That Compliance is Impossible

Rise states that it "does not have sufficient funds to pay into the Court the ordered $319,744.74" and that if the Court's Order is enforced, "Rise cannot continue in business." Opposition at 3. Rise does not submit any evidence to support this position.

To avoid contempt, Rise must show that compliance was impossible. *United States v. Puerto Rico*, 642 F.3d 103, 108 (1st Cir. 2011); *Fortin v. Comm'r of Massachusetts Dep'tt of Pub. Welfare*, 692 F.2d 790, 796 (1st Cir. 1982) ("Impossibility would be a defense to contempt, but the [defendant] ha[s] the burden of proving impossibility, and that burden is difficult to meet.") (internal citations omitted). A defendant must "establish his inability clearly, plainly, and unmistakably." *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995). *See also S.E.C. v. Current Fin. Servs., Inc.*, 798 F. Supp. 802, 808 (D.D.C. 1992) ("To establish impossibility as a defense to a civil contempt order, a contemnor must demonstrate his inability to comply categorically and in detail."). "Although diligence is relevant to the question of ability to comply…evidence of diligence alone does not satisfy that burden." *Fortin*, 692 F.2d at 796-97 (finding that affidavits of department officials detailing administrative changes made to decrease delays was not sufficient to prove that further ordered improvements would be impossible).

Here, unlike the defendant in *Fortin* who at least mounted some effort to establish diligence, Rise has not submitted *any* evidence demonstrating *any* attempts at compliance. As noted above, the Order required Rise to provide an accounting of amounts paid and owed to Essential and to deposit $319,744.74 into escrow. Rise says *nothing* about why it has not produced the accounting, and offers nothing but conclusory statements regarding its ability to comply with the escrow directive. Rise's self-serving conclusions are insufficient to meet its burden to show that it was impossible to comply with the Court's Order. Moreover, Rise's

averments are contradicted by public records, including evidence supplied by Plaintiff showing that Rise is working on a $38 million project and recently paid $381,210 in fees for the building permits. At the very least, because Rise has opened the door to questions about its ability to satisfy the escrow portion of the Order, and because there are legitimate questions about whether Rise has transferred funds to avoid compliance (*see* FN 2, *supra*, and ECF Nos. 44, 44-5), the Court should order Rise to produce a full financial accounting of its bank account(s) and other financial records, including accounts receivable and accounts payable, for the time period following the Court's Order (May 13, 2025 to present).

## CONCLUSION

For all the reasons stated above, the Court should find Rise in contempt of its Order and order the following relief for Plaintiff:

1. Order Rise to immediately comply with the Court's Order by depositing the $319,744.74 into escrow and provide the ordered accounting to Plaintiff;
2. Order Rise to pay $15,147.24 for the attorney's fees and costs incurred by Plaintiff in seeking to enforce the Order, including the fees and costs associated with filing the Motion for Contempt, plus any additional amounts incurred by Plaintiff on this matter since the Motion for Contempt was filed;
3. Issue a conditional daily fine to compel Rise to comply with the Order; and
4. Order Rise to produce a full financial accounting of its bank account(s) and other financial records, including accounts receivable and accounts payable, for the time period of May 13, 2025 to present.

Respectfully submitted,

NATHAN P. GOLDSTEIN, as he is
EXECUTIVE DIRECTOR, MASSACHUSETTS

LABORERS' BENEFIT FUNDS,

By his Attorney,

/s/ Sasha N. Gillin
Sasha N. Gillin, BBO No. 690769
Sophie C. Esquier, BBO No. 698875
SEGAL ROITMAN, LLP
33 Harrison Avenue, 7th Floor
Boston, MA 02111
(617) 603-1428
sgillin@segalroitman.com
sesquier@segalroitman.com

Dated: July 16, 2025

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the above Reply to Rise Construction Management, Inc.'s Opposition to Plaintiff's Motion for Contempt has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 16th day of July, 2025.

/s/ Sasha N. Gillin
Sasha N. Gillin, Esquire

SNG/sng&ts
6306-23233/reply-opp-plas-motion-contempt.doc