**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NATHAN P. GOLDSTEIN, as he is EXECUTIVE DIRECTOR, MASSACHUSETTS LABORERS' BENEFIT FUNDS,<br>Plaintiff,<br><br>v.<br><br>ESSENTIAL DEMO, INC.,<br>Defendant,<br><br>and<br><br>RISE CONSTRUCTION MANAGEMENT INC.,<br>Reach-and-Apply Defendant. | C.A. No. 24-cv-10248-FDS |

**PLAINTIFF'S OPPOSITION TO DEFENDANT ESSENTIAL DEMO, INC.'S MOTION FOR LEAVE TO FILE A CROSSCLAIM AGAINST REACH AND APPLY DEFENDANT RISE CONSTRUCTION MANAGEMENT INC.**

On January 21, 2026, Defendant Essential Demo, Inc. ("Essential") filed a motion for leave to bring crossclaims against the recently dismissed Reach-and-Apply Defendant in this case, Rise Construction Management Inc. ("Rise"). Essential's motion comes after two years of litigation, after the close of discovery, after the deadline to file amendments to pleadings passed, after nearly six months of contempt proceedings, and after the conclusion of a three-day evidentiary hearing. Most importantly, Essential's motion comes on the heels of the successful settlement of Plaintiff's reach-and-apply claims against Rise and the Court's subsequent dismissal of Rise from the action.

While Plaintiff has doubts about the merits of Essential's proposed crossclaims (including Essential's standing to bring certain claims), Plaintiff mainly objects to Essential's request on procedural and equitable grounds. Plaintiff strongly objects to the proposed

crossclaims being added to *this* case at *this* stage of the litigation. As set forth in greater detail below, allowing Essential to bring these crossclaims now would effectively allow Essential to start its own litigation against Rise from square one, prolonging and further complicating a case that began as a rather straightforward ERISA action to collect unpaid employee benefit contributions that Essential owed to the Plaintiff Funds on behalf of its laborer employees.

Plaintiff respectfully requests the Court deny Essential's motion because it is both inexcusably late and highly prejudicial to Plaintiff and because ERISA § 515 limits the claims and defenses an employer may make in an action to collect unpaid employee benefit contributions. As set forth below, Essential has other remedies available to it and may file its proposed indemnification-type crossclaims against Rise as a separate lawsuit. In the alternative, if the Court allows Essential to bring new crossclaims against Rise, Plaintiff respectfully requests that such claims be severed from the existing case so Plaintiff's claims against Essential can be concluded expeditiously.

## I. Factual Background

Plaintiff filed the instant suit against Essential Demo, Inc. ("Essential") on January 30, 2024, seeking to collect unpaid employee benefit contributions owed to the Massachusetts Laborers' Benefit Funds. [ECF No. 1 at ¶¶ 19, 22]. On March 27, 2024, Plaintiff filed an amended complaint naming Rise as a reach-and-apply defendant and seeking to reach-and-apply monies Rise owed to Essential for work performed as a subcontractor for Rise. [ECF No. 9 at ¶¶ 11, 22]. Essential filed its answer to the amended complaint on July 31, 2024. [ECF No. 15]. Essential did not include a crossclaim in its answer. *Id.* On March 31, 2025, the Court entered a scheduling order which required any amendments to pleadings to be filed by November 28, 2025. [ECF No. 40]. Fact discovery in the case was also ordered to be concluded by November

28, 2025. *Id.* Plaintiff was the only party to issue written discovery. Neither Essential nor Rise responded to Plaintiff's discovery requests, nor issued any discovery requests of their own.

On October 9, 2024, Plaintiff filed a motion for a temporary restraining order and preliminary injunction requesting that the Court, *inter alia,* order Rise to deposit $319,744.74 it owed to Essential into escrow pending disposition of Plaintiff's reach-and-apply claim and order Rise to provide Plaintiff with an accounting of all amounts owed to Essential. [ECF No. 22 at 1-2]. Plaintiff's motion included an affidavit from Essential's principal, Christopher Grossmann, attesting to Rise's nonpayment of Essential's bills. [*See* ECF No. 25 at 1-2].

The Court granted Plaintiff's motion in a preliminary injunction order against Rise on May 13, 2025 and ordered Rise to deposit $319,744.74 into escrow. [ECF No. 41 at 13-14]. When Rise did not deposit any money into escrow or provide Plaintiff with an accounting of amounts owed to Essential, Plaintiff filed a motion for contempt against Rise on June 30, 2025. [ECF Nos. 42 at 1-2 and 44 at ¶¶ 17-18]. On September 22, 2025, this Court found Rise in contempt of the preliminary injunction order and, as a contempt remedy, ordered Rise to produce certain bank account statements in addition to the original ordered accounting. [ECF No. 50 at 1-2]. When Rise still did not comply with the Court's orders (*see* ECF No. 52), the Court on October 15, 2025 found Rise to be in further contempt of its September 22 remedial order and imposed a $1,000-per-day fine on Rise. [ECF No. 55 at 1-2]. Essential did not participate in the contempt proceedings.

The Court thereafter scheduled an evidentiary hearing, directing the parties to address two issues: (1) Did Rise have the ability to pay the escrow order, and if not, why not? And (2) What is the amount that Rise owes to Essential? [ECF No. 62]. On November 13, 2025, the Court held the first day of evidentiary hearing. Plaintiff conducted direct examination of Rise's

CEO, James Grossmann. [ECF No. 65]. On November 24, 2025, the Court held the second day of hearing, during which both James Grossmann and Essential's principal, Chris Grossmann, gave further testimony. [ECF No. 69]. Thereafter, Rise's attorney withdrew from the case, and the clerk entered Rise's default. [ECF No. 78].

Following Rise's default, Plaintiff and Rise entered into a settlement agreement, whereby Rise agreed to pay $300,000.00 to resolve Plaintiff's reach-and-apply claim against it. [ECF No. 81]. Under the settlement agreement, Rise's payment of the settlement amount reduces the Funds' claim against Essential by the amount of the payment. Pursuant to the terms of the settlement agreement, on January 16, 2026, Plaintiff filed a motion for a 45-day settlement order of dismissal of its reach-and-apply claim against Rise. *Id.* Rise satisfied its payment obligations under the settlement agreement on January 20, 2026. On January 21, the Court granted Plaintiff's motion and issued a settlement order of dismissal of the Funds' claims against Rise. [ECF Nos. 86-87]. The Settlement Order stated: "The Court having been advised on January 16, 2026, that the above-entitled action [against Rise Construction Management Inc.] has been settled, IT IS ORDERED that this action is hereby dismissed without costs and without prejudice to the right of any party, upon good cause shown, to reopen the action within forty-five (45) days if settlement is not consummated." [ECF No. 87]. On the same day the Court issued the Settlement Order, Essential filed a motion seeking leave to file new crossclaims against Rise. [ECF No. 82].

Essential's motion for leave included its proposed crossclaims as Exhibit A. [ECF No. 82-1]. The document includes five counts: (1) a breach of contract claim alleging Rise breached its construction subcontract(s) with Essential (Count I); (2) a Massachusetts Prompt Pay Act claim alleging Rise breached M.G.L. c. 149 § 29E by failing to timely pay Essential for its work (Count II); (3) a breach of the implied covenant of good faith and fair dealing claim alleging that

Rise "destroy[ed] Essential's right to receive the fruits of the Rise Subcontracts" (Count III); (4) a claim alleging that Rise is liable to Essential under the collective bargaining agreement with the Union (Count IV); and (5) a claim alleging that "Rise is liable to Essential for the Funds' claim against Essential." (Count V). *Id.* at 3-6. For each claim, Essential requests that the Court award Essential "the Rise Delinquency"[1] plus "all damages per 29 U.S. Code § 1132(g) that may be awarded to the Funds plus Essential's attorney's fees, costs, and interest." *Id.*

## II. Standard of Review

Fed. R. Civ. P. 13(g) states that "[a] pleading may state as a crossclaim any claim by one party against a coparty." Therefore, to file a crossclaim, a party must either assert the crossclaim in its initial pleading or must seek leave to amend its initial pleading to include a crossclaim. *Palumbo v. Roberti*, 834 F. Supp. 46, 54 (D. Mass. 1993) ("Although technically not itself a pleading, a cross claim must be stated in a pleading and is governed by Rule 15, Fed.R.Civ.P."). For its part, Fed. R. Civ. P. 15(a) states that, if a party seeks to amend a pleading which does not itself require a responsive pleading (such as an answer) more than 21 days after serving it, the "party may amend its pleading only with the opposing party's written consent or the court's leave." In general, when determining whether to grant a motion to amend, a court must consider, *inter alia*, whether the amendment would prejudice the opposing party and whether there is inexcusable delay in seeking leave to amend. *Palumbo*, 834 F. Supp. at 54.

However, if a party seeks to amend its pleading after the court's scheduled deadline for amending pleadings, the party is subject to "'the more stringent good cause standard' in Fed. R. Civ. P. 16(b)" governing scheduling orders. *Gouin v. Nolan Assocs., LLC*, 325 F.R.D. 521, 523 (D. Mass. 2017) (quoting *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st Cir.

---

[1] The "Rise Delinquency" is the "at least $300,000" that "Rise currently owes Essential…for the Rise Invoices." [ECF No. 82-1 at 3].

2004)). In evaluating whether a party has shown good cause to amend after the scheduling order deadline, courts consider "1) the diligence of the party seeking the amendment and 2) whether the opposing party would be prejudiced if modification were allowed." *Id.* (internal quotations omitted).

The purpose of the good cause standard is to provide courts with the "devices necessary to manage its docket" and to prevent parties from treating a scheduling order as "a frivolous piece of paper idly entered" by the court. *O'Connell*, 357 F.3d at 155 (quoting *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 610 (9th Cir. 1992)). Therefore, rather than focusing primarily on the bad faith of the movant and prejudice to the opposing party, the good cause standard "emphasizes the diligence of the party seeking the amendment" such that, even if no prejudice is shown to the opposing party, a motion to amend may otherwise be denied "irrespective of prejudice because such conduct is incompatible with the showing of diligence necessary to establish good cause." *O'Connell*, 357 F.3d at 155.

## III. Argument

### A. Essential's Motion is Inexcusably Untimely

Essential's request for leave to file crossclaims against Rise is inexcusably untimely and prejudicial to Plaintiff. To begin, although styled as a "motion for leave to file a crossclaim," Fed. R. Civ. P. 13(g) does not allow a party to simply file a standalone crossclaim whenever that party chooses. Rather, Rule 13(g) states that "[a] <u>pleading</u> may state as a crossclaim any claim by one party against a coparty." (emphasis added). Here, Essential's operative pleading in this case is its answer to Plaintiff's amended complaint, which Essential filed on July 31, 2024. [ECF No. 15]. Because Essential did not include crossclaims against Rise in its answer, it may now only assert crossclaims against Rise by amending its answer to include those claims. *Palumbo*, 834 F.

Supp. at 54. However, because Essential seeks to amend its answer several months after the scheduling order's November 28, 2025 deadline for amendments to pleadings, Essential bears the burden of meeting Fed. R. Civ. P. 16(b)'s "stringent" good cause standard by showing that, despite its untimely motion, it exercised proper "diligence" in seeking to amend its answer. [ECF No. 40]; *O'Connell,* 357 F.3d at 155.[2] This, Essential does not do.

Essential plainly did not exercise diligence in seeking to file its crossclaims because the proposed crossclaims are not based on newly uncovered evidence, and Essential has not demonstrated any other reasonable excuse for the delay. *Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013) (denying motion to amend after scheduling order deadline where "[n]o new evidence was alleged to have been uncovered and no excuse was offered").[3] Rather, Essential was fully aware of the facts forming the basis of its proposed crossclaims when it filed its answer to Plaintiff's amended complaint a year and a half ago.

Specifically, all of Essential's proposed crossclaims are based on the same operative facts: namely that Essential performed subcontract work for Rise and was not paid for that work. [ECF No. 82-1 ¶¶ 10-14]. These are the same operative facts upon which Plaintiff's reach-and-apply claim against Rise was based. *See Katz v. Spiniello Companies*, No. CV 16-11380, 2018 WL 2122832, at *2 (D. Mass. May 8, 2018) (denying motion to amend to add crossclaims "where the facts underlying those crossclaims … were pled in the operative complaint"). In fact, Essential alleges in its proposed crossclaims that it "started experiencing severe cash flow

[2] Notably, the Court's order of dismissal similarly states that the action may only reopened by any party "upon good cause shown." [ECF No. 87].

[3] Essential's motion—which did not include an accompanying memorandum of law—not only does not explain Essential's delay in filing the instant motion, but it does not even acknowledge that the motion is late. [*See* ECF 82 at 1-2]. Rather, Essential only notes that, because crossclaims are not compulsory claims, it was not required to include its crossclaims in its answer to Plaintiff's amended complaint. *Id.* at 1. While it is true that Essential was not *required* to include crossclaims in its answer, that does not mean that Essential is free to add those crossclaims a year and a half after filing its answer and several months after the scheduling order deadline for amendments to pleadings.

problems circa July 2023 because of Rise's failure to pay all of the Rise Invoices." [ECF No. 82-1 ¶ 16] (emphasis added). Therefore, before the instant suit was even filed, Essential was aware of the facts that form the basis of its plainly untimely proposed crossclaims against Rise.

Essential's knowledge of the facts relevant to its proposed crossclaims is further bolstered by the fact that Essential filed suit against Rise in Suffolk Superior Court on May 7, 2024—before Essential filed its answer to Plaintiff's amended complaint in the instant suit—seeking payment for subcontract work it performed for Rise. *See Essential Demo, Inc. v. Rise Construction Management Inc.*, Suffolk Superior Court No. 2484CV01219. Essential's state court suit was ultimately dismissed without prejudice due to Essential's failure to serve Rise with the complaint. *See id.*, Dkt. No. 3 (Judgment of Dismissal Under Standing Order 1-88) (August 20, 2024). Therefore, not only did Essential have the requisite knowledge to bring its crossclaims when it filed its answer to Plaintiff's amended complaint, Essential had already brought claims against Rise for Rise's nonpayment on a subcontract during the pendency of the instant suit in a separate jurisdiction.

Further, Essential's principal, Chris Grossmann, provided Plaintiff with an affidavit in support of Plaintiff's motion for the preliminary injunction against Rise. *See* ECF No. 25. In the affidavit, which was filed on October 9, 2024, Grossmann stated that Essential's failure to pay contributions to the Funds was due to Rise's nonpayment of its invoices. *Id.* at ¶¶ 9-10. Thus, as of October 2024, Essential had set forth, in this litigation, the operative facts that give rise to the very causes of action it now seeks to assert by filing new crossclaims more than 15 months later. Plaintiff notes that Essential has been represented by experienced counsel throughout this litigation, so its failure to seek leave to amend its answer in a timely manner cannot be chalked up to a failure to recognize the potential existence of legal claims against Rise. Far from

exercising the requisite diligence to show good cause to amend, Essential "was 'obviously aware of the [cross]claim for many months' but failed to move to amend" in a timely fashion. *O'Connell*, 357 F.3d at 156-157 (quoting *Leary v. Daeschner*, 349 F.3d 888, 908 (6th Cir. 2003)). This lack of diligence is itself fatal to Essential's motion.

Finally, even though Plaintiff need not show that it would be prejudiced under the good cause standard, Plaintiff would in fact be substantially prejudiced if Essential were allowed to file its untimely crossclaims against Rise. *O'Connell*, 357 F.3d at 155 (motion to amend may be denied under good cause standard "irrespective of prejudice"). As noted above, Plaintiff and Rise have entered into a settlement agreement, and the Court has entered a 45-day settlement order of dismissal in this case. As such, Rise is already dismissed from this case.[4]

Therefore, Essential seeks to bring Rise, a party who has already been dismissed from the suit via settlement, back into the case and to start its own litigation against Rise from square one, including reopening discovery and relitigating dispositive motions. *See Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) ("Particularly disfavored are motions to amend whose timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy'") (quoting *Acosta–Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52–53 (1st Cir.1998)).

This litigation has already become an extraordinarily expensive undertaking for Plaintiff, who has a fiduciary responsibility to collect contributions owed to the Funds. Plaintiff also reminds the Court that Essential did not even participate in discovery when it had the chance—not only did Essential fail to answer any of Plaintiff's discovery requests, it also failed to issue any of its own discovery requests. Giving Essential a second bite of the apple at this stage and

[4] Since Rise has already performed fully under the settlement agreement, Plaintiff does not intend to reopen the case against Rise.

under these circumstances would prejudice Plaintiff, who, despite settling its reach-and-apply claims with Rise, would now have to prolong its involvement in a half-settled case that was otherwise nearing its conclusion. As such, Essential clearly cannot show good cause to amend its answer, and its motion must be denied.

### B. ERISA Limits the Claims and Defenses an Employer May Make in a Suit to Collect Unpaid Contributions

ERISA § 515 limits an employer's defenses in a collections action and was promulgated to prevent costly litigation over exactly these sorts of peripheral claims. *See Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990) ("courts of appeals that have construed section 515 have unanimously regarded it as a limitation on the defenses available to an employer when sued by an employee benefit plan"); *Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1152 (7th Cir. 1989); *Sw. Administrators, Inc. v. Rozay's Transfer,* 791 F.2d 769, 773-74 (9th Cir. 1986) ("Congress and the courts have acted to simplify trust fund collection actions by restricting the availability of contract defenses, which make collection actions unnecessarily cumbersome and costly").

As such, courts have held that ERISA § 515 precludes defendants in collections actions from bringing third-party claims the defendant could not raise against the collecting funds, as those claims "unnecessarily complicate and delay resolution of" simple collection actions. *Laborers' Pension Fund v. McKinney Const. Corp*., No. 99 C 5435, 2000 WL 1727779, at *3-*4 (N.D. Ill. Nov. 21, 2000) (denying defendant's motion to implead party pursuant to ERISA § 515). Here, because Essential's crossclaims would complicate and lengthen the instant suit by bringing unrelated contract and state-law claims against Rise, ERISA § 515 serves as a bar to Essential's motion for leave to file those crossclaims. *See Massachusetts Laborers' Health & Welfare Fund v. Varrasso*, 111 F.R.D. 62, 64 (D. Mass. 1986) (striking defendant's third-party

complaint impleading union) (citing *Sw. Adm'rs, Inc. v. Rozay's Transfer,* 791 F.2d 769 (9th Cir. 1986)).

## CONCLUSION

For all the reasons stated above, the Court should deny Essential Demo, Inc.'s Motion for Leave to File Crossclaim Against Reach and Apply Defendant Rise Construction Management Inc.

Respectfully submitted,

NATHAN P. GOLDSTEIN, as he is
EXECUTIVE DIRECTOR, MASSACHUSETTS
LABORERS' BENEFIT FUNDS,

By his Attorneys,

/s/ Sasha N. Gillin
Sasha N. Gillin, BBO No. 690769
Nico J. Marulli, BBO No. 713396
SEGAL ROITMAN, LLP
33 Harrison Avenue, 7th Floor
Boston, MA 02111
(617) 603-1428
sgillin@segalroitman.com
nmarulli@segalroitman.com

Dated: January 30, 2026

## CERTIFICATE OF SERVICE

This is to certify that a copy of the above Plaintiff's Opposition to Defendant Essential Demo, Inc.'s Motion for Leave to File Crossclaim Against Reach and Apply Defendant Rise Construction Management Inc. has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 30th day of January, 2026.

/s/ Sasha N. Gillin
Sasha N. Gillin, Esquire